IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TOMTOM, INC., | ) | |
|    Plaintiff, | ) | |
| | ) | |
|    v. | ) | Case No. 1:12cv528 |
| | ) | |
| AOT SYSTEMS GMBH, *et al.*, | ) | |
|    Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

On February 25, 2014, a Memorandum Opinion and Order issued in this patent infringement case construing nine disputed claim terms of U.S. Patent No. 6,356,836 ("the '836 patent"). *TomTom, Inc. v. AOT Systems GmbH, et al.*, 2014 WL 792031 (E.D. Va. Feb. 25, 2014) (Memorandum Opinion). Defendant Michael Adolph ("Dr. Adolph") now seeks reconsideration of the portion of the Memorandum Opinion and Order construing two particular disputed claim terms and phrases: (1) "node" and (2) "destination tracking system of at least one mobile unit." For the following reasons, Dr. Adolph's motion for reconsideration must be denied.

I.

Dr. Adolph moves for reconsideration under Rule 54(b), Fed. R. Civ. P., which governs reconsideration of interlocutory motions. Under this rule, a district court "retains the power to reconsider and modify its interlocutory orders...at any time prior to final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). The resolution of motions to reconsider pursuant to Rule 54(b) is "committed to the discretion of the district court," which may be exercised "as justice requires." *Id.* at 515. The Fourth Circuit has made clear that the

1

standards governing reconsideration of final judgments are not determinative of a Rule 54(b) motion,[1] but some courts have appropriately considered those factors in guiding the exercise of their discretion under Rule 54(b).[2] Thus, these courts generally do not depart from a previous ruling unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). Such problems "rarely arise and the motion to reconsider should be equally rare." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). Motions to reconsider asking a court to "rethink what the Court had already thought through—rightly or wrongly" should not be granted. *Id*.

Here, Dr. Adolph has failed to identify any change in the applicable law or pertinent facts since entry of the Memorandum Opinion and Order construing the nine disputed claim terms. Put simply, Dr. Adolph disagrees with the current claim construction and asks for reconsideration of two terms based on new arguments that Dr. Adolph could have presented during the claim construction phase of the proceedings, but chose not to do so. In his original claim construction brief, Dr. Adolph argued that none of the nine disputed claim terms or phrases needed to be construed and that each claim term or phrase should be given its ordinary meaning. In so doing, Dr. Adolph took a risk during the claim construction phase by offering no proposed definition for any of the disputed claim terms, and this gambit failed, as he lost. Yet, Dr. Adolph

---

[1] *Am. Canoe Ass'n*, 326 F.3d at 515.

[2] *See, e.g., Al Shimari v. CACI Intern., Inc.*, 933 F.Supp.2d 793 (2013); *McAfee v. Boczar*, 2012 WL 2505263 (E.D. Va. June 28, 2012); *Shanklin v. Seals*, 2010 WL 1781016 (E.D. Va. May 3, 2010); *Above the Belt, Inc.*, 99 F.R.D. at 101.

now asks for a "do-over" of claim construction and offers new constructions of the disputed terms and phrases that he chose not to offer in his original claim construction briefs based on arguments that he failed to raise in these briefs. The failure to propose claim constructions and the failure to raise these arguments during the claim construction briefing and argument does not fit within any of the permissible grounds for motions for filing a motion for reconsideration. Nonetheless, as a matter of grace, and in the interest of ensuring that the claim constructions set forth in the Memorandum Opinion and Order are correct, the merits of Dr. Adolph's motion for reconsideration will be addressed.

## II.

### A.

In the Memorandum Opinion construing the disputed claim terms at issue in this case, the term "node" was construed to mean "intersection, origin, destination, or point at which the vehicle changes direction by more than a predetermined value in a grid or road network." *TomTom, Inc.*, 2014 WL 792031 at *15. This definition was based on the specification, which described three different types of nodes: (1) "nodes at the intersection of sections," Col. 10, ll. 17-18; (2) "nodes where the vehicle direction changes by more than a given predetermined value," Col. 10, ll. 16-17; and (3) "origin and/or destination nodes," Col. 12, l. 21.

Dr. Adolph seeks reconsideration of this construction of "node" for two reasons: (1) that the primary embodiment of the invention is rendered inoperable if the invention can only record nodes that are restricted to a known grid or road network, and (2) that both the claim language and the specification include other meanings of "node" not included in the Court's current claim construction. Thus, Dr. Adolph argues on reconsideration, for the first time, that "node" should be construed as "**a geographic location, which is associated with** an intersection, origin,

destination, or point at which the vehicle changes direction by more than a predetermined value, ~~in a grid or road network~~ **or which is obtained a predetermined time interval, or after a certain distance has been covered.**"[3]

Dr. Adolph's argument is unpersuasive. First, it is unnecessary to add "a geographic location" to the definition of "node," because the latter part of claim 1 states that "to each node $P_i$ geographical coordinates $x_i$ and $y_i$ are assigned." '836 patent, Col. 17, ll. 42-44. Thus, it is clear from the existing language of the claim that a "node" has a geographic location, and therefore, it is unnecessary to add to the definition of "node" the phrase "a geographic location."

Second, Dr. Adolph also argues that the phrase "in a grid or road network" must be removed from the definition of "node" because it renders the invention inoperable. This argument is also unpersuasive. To begin with, Dr. Adolph's argument that the Court's construction of "node" renders the invention inoperable is based on the words—"existing" and "known"—that are not in the Court's definition of "node," but are simply added by Dr. Adolph without explanation. In his brief, Dr. Adolph states that his invention collects data "without regard for whether the newly collected points are located in an **existing** grid or road network" (emphasis added). His brief further states that restricting the phrase "node" to "**known** grid or road network[s]…completely defeats one of the primary purposes and embodiments of the invention, which is to enable users to create new digital road data and traffic data while they drive" (emphasis added). Yet, as noted, neither the word "known" nor the word "existing" is currently in the Court's definition of "node." Thus, Dr. Adolph's claim that the Court's

---

[3] The bolded portions represent phrases that Dr. Adolph seeks to add to the Court's construction of "node." The struck-through portions represent phrases that Dr. Adolph wishes to redact from the Court's construction of "node."

construction of "node" renders the invention inoperable is based on a construction of Dr. Adolph's creation.

Furthermore, the intrinsic evidence flatly contradicts Dr. Adolph's unsubstantiated claim that the Court's construction of "node" renders the invention inoperable. In this regard, the intrinsic evidence makes clear that a "node" exists on a grid or road network. To explain what a "node" is, the specification shows a "schematic representation of a road network with nodes 1 to 16 representing road intersections with the lines connecting the nodes representing roads." '836 patent, Col. 7, ll. 61-63. Thus, Dr. Adolph's argument that his invention is rendered inoperable by the Court's construction of the term "node" based on the inclusion of the phrase "in a grid or road network" is not supported by the intrinsic evidence, which specifically states that nodes are located on a road network.

Finally, Dr. Adolph argues that the phrase "or which is obtained at a predetermined time interval, or after a certain distance has been covered" must be added to the definition of "node." This argument is based on Dr. Adolph's erroneous claim that the terms "node" and "point" are used interchangeably in the specification, and thus, these examples of "points" should be included within the construction of the term "node." But "points" and "nodes" are not used interchangeably in the specification. Instead, the specification makes clear that a node is not just any point, but is instead a specific type of point. For example, the patent states that traveled distance data is compiled by "dropping individual points" and "choosing those points…which are most characteristic in defining a section of the routes." '836 patent, Col. 10, ll. 11-14. These "characteristic" points are defined in the specification as "characteristic route nodes…where the vehicle changes direction by more than a given predetermined value, or nodes at the intersection of sections oriented in different directions, or nodes that are otherwise conspicuous." '836

5

patent, Col. 10, ll. 15-19. Thus, the specification makes clear that a "node" is a certain type of point, a subclass of points. The term "point" is used to describe the collection of many data points, and the term "node" is used to define more precisely the characteristic points used by the invention to generate data. Thus, the intrinsic evidence does not support Dr. Adolph's claim that the terms "node" and "points" are synonymous; instead, the specification makes clear that "nodes" are a subclass of "points." Given this, it is important to note that the Federal Circuit has stated that, absent evidence that two terms in a patent are synonymous, courts must "presume that the use of these different terms in the claims connotes different meanings." *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).[4] Accordingly, none of Dr. Adolph's arguments for reconsidering the construction of the term "node" are persuasive.

### B.

As the Memorandum Opinion and Order reflect, the phrase "destination tracking system of at least one mobile unit" means "destination tracking system of at least one mobile unit that does not contain initial information relating to existing road networks." *TomTom, Inc.*, 2014 WL 792031 at *15. This definition appropriately excludes destination tracking systems that contain initial information relating to existing road networks because the prosecution history reflects that Dr. Adolph distinguished his invention from prior art by stating during the prosecution history that the '836 patent "allows even a single mobile unit to commence generating and storing data

---

[4] *See also Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("[T]he use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each."); *Ethicon Endo-Surgery v. United States Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) ("If the terms 'pusher assembly' and 'pusher bar' described a single element, one would expect the claim to consistently refer to this element as either a 'pusher bar' or a 'pusher assembly,' but not both…Therefore, in our view, the plain meaning of the claim will not bear a reading that [the terms] are synonymous.").

6

without the need for any additional information relating to existing road networks." *TomTom, Inc.*, 2014 WL 792031, Doc. 167, Ex. F (Prosecution History) at *13. As the prosecution history reflects, Dr. Adolph stated to the examiner that his invention was distinguished from the prior art because the prior art "requires that an initial database representing road data or roadways be loaded into the system before the additional acquisition of data can take place." *TomTom, Inc.*, 2014 WL 792031, Doc. 167, Ex. C (Prosecution History) at *5. Therefore, the Court's construction of "destination tracking system" appropriately excludes destination tracking systems that contain initial information relating to existing road networks. This is faithful to Federal Circuit law which states that "prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations." *Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000). Where, as here, "an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope" of the claim. *Seachange Intern., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005). Dr. Adolph overcame the Saito prior art by limiting claim 1 to a method that does not include initial information, and thus, the claimed invention cannot include a destination tracking system containing initial information.

Dr. Adolph offers two arguments in an effort to avoid this result: (1) that the prosecution history repeatedly uses the phrase "does not require" instead of "does not contain," and (2) that the claimed destination tracking system is rendered inoperable if it cannot use initial road network information. Thus, Dr. Adolph argues that "destination tracking system of at least one mobile unit" should be construed as "destination tracking system of at least one mobile unit that does not ~~contain~~ require information relating to existing road networks."

7

Both reasons are unpersuasive. As the Memorandum Opinion explained, and as TomTom has correctly noted, Dr. Adolph explicitly disclaimed in the prosecution history destination tracking systems that (i) contain information relating to existing road networks, (ii) rely on an initial database, and (iii) require for operation the initial input of road data. Even preloading a small set of data onto the claimed invention was disavowed during prosecution. To allow Dr. Adolph's construction of the phrase "destination tracking system of at least one mobile unit" would mean that Dr. Adolph's invention would cover prior art that Dr. Adolph clearly disavowed during the prosecution history of the '836 patent. Dr. Adolph's argument is contrary the settled principle that an applicant who argues during prosecution that "a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection" is bound by that representation. *Seachange Intern., Inc.*, 413 F.3d at 1372-73. Thus, the phrase "destination tracking system of at least one mobile unit" is correctly construed as "destination tracking system of at least one mobile unit that does not contain initial information relating to existing road networks." *TomTom, Inc.*, 2014 WL 792031 at *15.

## III.

Accordingly, because Dr. Adolph presents no persuasive reason to reconsider and alter the definitions of "node" and "destination tracking system of at least one mobile unit," Dr. Adolph's motion for reconsideration must be denied.

An appropriate Order will issue.

Alexandria, Virginia
April 15, 2014

/s/
T. S. Ellis, III
United States District Judge