**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| TOMTOM, INC.,<br><br>　　　　Declaratory Judgment Plaintiff,<br><br>　　　　v.<br><br>MICHAEL ADOLPH,<br><br>　　　　Declaratory Judgment Defendant. | Case No. 1:12-cv-528 (TSE/IDD) |

**MEMORANDUM IN SUPPORT OF TOMTOM'S MOTION FOR JUDGMENT ON THE
PLEADINGS THAT THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101**

James H. Wallace, Jr. (admitted *pro hac vice*)
Brian H. Pandya (VSB No. 72233)
Karin A. Hessler (VSB No. 76834)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)

*Counsel for Declaratory Judgment Plaintiff
TomTom, Inc. and Counterclaim Defendants
TomTom International B.V. TomTom North
America, Inc.*

Dated:  August 6, 2015

## TABLE OF CONTENTS

**Page**

I.  Introduction and Summary of the Argument ....................................................................1

II.  Background Facts.............................................................................................................2

    A.  Nature and Stage of the Case .................................................................................2

    B.  Overview of U.S. Patent No. 6,356,836 ................................................................3

        1.  The Patent Claims Generating and Manipulating Data ............................. 3

        2.  The Claimed Method Is Performed Using Generic Hardware and Software ...................................................................................................... 5

III.  Legal Standards for Patent Eligibility............................................................................6

    A.  The Supreme Court's Two-Step *Alice* Framework.................................................6

    B.  Patent Eligibility Is a Threshold Question of Law That Should Be Addressed Before Further Proceedings on Remand ................................................9

IV.  The Adolph Patent Is Invalid Under § 101 ......................................................................10

    A.  The Patent Claims the Abstract Idea of Recording Trip Data ...............................10

    B.  The Patent Claims Add Nothing To The Claimed Abstract Idea ..........................14

V.  Conclusion .....................................................................................................................15

    Appendix A (list of post-*Alice* cases invaliding patents)

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013)...................................................................................9, 12

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
   134 S. Ct. 2347 (2014)................................................................................. *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   56 F. Supp. 3d 813 (E.D. Va. 2014), ...................................................................9

*Bilski v. Kappos*,
   561 U.S. 593 (2010)...............................................................................................6

*buySAFE, Inc. v. Google, Inc*,
   765 F.3d 1350 (Fed. Cir. 2014)..........................................................................11

*California Institute of Technology v. Hughes Communications, Inc.*,
   59 F. Supp. 3d 974, 978 (C.D. Cal. 2014) ...........................................................8

*Content Extraction v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014)..........................................................................11

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)..........................................................................12

*DDR Holdings, LLC v. Hotels.com, L.P.*
   773 F.3d 1245 (Fed. Cir. 2014)............................................................................8

*Digitech Image Technologies v. Electronics for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014).....................................................................10, 14

*Enfish, LLC v. Microsoft Corp.*,
   56 F. Supp. 3d 1167 (C.D. Cal. 2014) ..................................................8, 9, 13, 15

*In re TLI Communications Patent Litigation*,
   MDL No. 1:14-md-2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) ............................ *passim*

*I/P Engine, Inc. v. AOL Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014) (Mayer, J. concurring) ......................................................9

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   132 S. Ct. 1289 (2012)................................................................................7, 10, 11, 12

*Thales Visionix, Inc. v. United States*,
Case No. 14-513C, 2015 WL 4396610 (Fed. Cl. July 20, 2015).......................................12, 14

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)..................................................................................7, 10, 11

*Versata Development Group, Inc. v. SAP America, Inc.*,
Case No. 2014-1194, 2015 WL 4113722 (Fed. Cir. July 9, 2015)..........................................10

**FEDERAL STATUTES**

35 U.S.C. § 101.............................................................................................. *passim*

**RULES**

Rule 12(c)...........................................................................................................9

**OTHER AUTHORITIES**

http://virtualskies.arc.nasa.gov/navigation/1.html .. .......................................................5

http://www.wipo.int/treaties/en/registration/pct/summary_pct.html..............................................3

**I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT**

U.S. Patent No. 6,356,836 ("the '836 patent" or "the Adolph patent") should join the long line of patents declared invalid in the wake of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). *Alice* made clear that inventions (1) claiming abstract ideas and (2) implemented with generic hardware and software are ineligible for patent protection under 35 U.S.C. § 101.

The '836 patent does not claim a new GPS device, a better map, or even an improved navigation algorithm. The patent instead claims a "method for generating and updating data." Ex. A ('836 Patent), Col. 17:35-37 (Claim 1). The claimed data is created by: "[i] generating and storing traveled distance data . . . [that] represent traveled sections, [ii] generating and storing section data . . . generated by selecting, from the traveled distance data, nodes . . . which define contiguous sections, and [iii] generating a section data file from the section and storing the section data file." *Id*. at 17:37-55. In other words, the patent claims recording points traveled, dropping intermediate points along straight lines of travel, and storing the remaining points. The patent is therefore directed to the abstract idea of recording a trip, or more precisely, recording the route an individual took from point A to point B.

Plotting points traveled is an abstract idea that predates GPS devices, let alone the '836 patent. Mariners have used compasses and sextants for chart plotting for centuries. Pilots have used dead reckoning and inertial navigation techniques to log vectors and headings for decades. And even young children know the story of Hansel and Gretel dropping bread crumbs to mark their path. Post-*Alice*, Dr. Adolph must do more than claim the implementation of abstract ideas.

Dr. Adolph may argue that the data generated by his claimed method provides valuable information for later use; but even assuming Dr. Adolph is right, nothing in the '836 patent claims or specification "contains an inventive concept such that . . . [the '836 patent] is eligible for patent protection under § 101." *In re TLI Commc'ns Patent Litig*., MDL No. 1:14-md-2534,

2015 WL 627858, *10 (E.D. Va. Feb. 6, 2015).  The claimed method is performed using, at most, generic equipment (*e.g.,* GPS receivers, compasses, and milometers) in a routine and conventional manner.  '836 Patent, Col. 8:26-44.  The specification speaks in functional terms and recites generic computer components, *i.e.*, "a control device," "an interface," "a microprocessor," "a ROM," and "a RAM." *Id.* at 8:64-9:5.

The '836 patent accordingly fails the patent eligibility framework the Supreme Court set forth in *Alice*.  The '836 patent claims an abstract idea implemented by using generic components to perform routine functions.  The claims should accordingly be held invalid.

## II.   BACKGROUND FACTS

### A.   Nature and Stage of the Case

This is a declaratory judgment action filed by TomTom, Inc. against Dr. Michael Adolph, the named inventor and putative owner of the '836 patent, alleging patent invalidity and non-infringement by TomTom navigation devices (*e.g.,* GPS devices mounted on dashboards of cars), after Dr. Adolph's company, AOT Systems GmbH, sued TomTom's distributor in Germany and threatened to sue TomTom in the United States.  *See* D.I. 8 (Amended Complaint) (Aug. 3, 2012).[1]  Dr. Adolph in turn counterclaimed for patent infringement against TomTom, Inc. (the entity that sells TomTom-brand navigation devices in the United States), TomTom International B.V. (TomTom, Inc.'s parent company), and TomTom North America, Inc. (formerly known as TeleAtlas, a company that sells maps, mainly to commercial customers).[2] *See* D.I. 85 (First Amended Answer/Third-Party Complaint) (Dec. 13, 2012).

---

[1]  On September 12, 2013, the district court in Dusseldorf, Germany ruled that TomTom devices do not infringe the European counterpart of the '836 patent.  Dkt #201-6 (English translation). On November 13, 2014, the Bundespatentgerich (the German federal patent court) invalidated claim 1 of the European patent.  Counsel for TomTom is in the process of obtaining an English translation of the invalidity ruling.

[2]  For the sake of convenience, and for purposes of this motion only, these three entities are collectively and interchangeably referred to as TomTom.

2

On March 15, 2013, the Court conducted a *Markman* hearing.  D.I. 188-189.  On February 25, 2014, the Court issued a memorandum opinion and order construing the disputed claim terms.  D.I. 198-199.  On April 21, 2014, after the Court denied Dr. Adolph's motion to reconsider certain claim constructions, the parties advised the Court that Dr. Adolph intended to stipulate to non-infringement to appeal some of the claim constructions to the Federal Circuit. D.I. 227-28.  The parties filed their proposed stipulation of non-infringement on June 18, 2014, (D.I. #232), and the Court entered final judgment on July 8, 2014.  D.I. 238.  Except for formal entry of final judgment, all proceedings at the district court were complete before the Supreme Court's *Alice* decision was handed down on June 19, 2014.

On June 19, 2015, the Court of Appeals for the Federal Circuit amended the appealed claim constructions and remanded the case for further district court proceedings.  D.I. 247.  No trial date has been set.

>    **B.**    <u>**Overview of U.S. Patent No. 6,356,836**</u>

>    >    1.    <u>The Patent Claims Generating and Manipulating Data</u>

The '836 patent "relates to a method for *generating and updating data* for use in a destination tracking system of at least one mobile unit."  '836 Patent, Col. 1:7-9 (emphasis added).  The patent explains "[n]avigational or destination tracking systems have recently been attracting significant attention, particularly their application in motor vehicles."  Col. 1:14-16. [3] Because destination tracking systems (*e.g.,* GPS devices) were ubiquitous when Dr. Adolph filed the PCT application underlying the '836 patent in 1998,[4] the patent does not attempt to claim a

---

[3]    The '836 patent devotes significant attention to discussing prior art navigation and data collection methods.  *See* Col. 1:14-3:36.  Based on those disclosures and the prosecution history, this Court observed that "substantial prior art exists in this technology field."  D.I. 198 at 5.

[4]    The application underlying the '836 patent was originally filed in Germany under the Patent Cooperation Treaty, which allows the filing of a single application in one nation before examination in each nation: http://www.wipo.int/treaties/en/registration/pct/summary_pct.html.

destination tracking system but instead seeks "to establish a method to generate appropriate data

utilizable for a practical destination tracking system." Col. 3:39-40.

Dr. Adolph presently asserts independent claim 1 and dependent claims 11, 22, 23, and

24. Claim 1 of the '836 patent is copied below:

> 1. A method for generating and updating data for use in a destination tracking system of at least one mobile unit comprising:
>
> generating and storing traveled distance data in at least one storage device provided in said mobile unit at least at predetermined time intervals, wherein the traveled distance data represent traveled sections by at least a series of nodes $P_i$ and to each node $P_i$ geographical coordinates $x_i$ and $y_i$ are assigned;
>
> generating and storing section data in the storage device provided in the mobile unit, said section data being generated by selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$, to which at least their geographical starting point and end point are assigned; and
>
> generating a section data file from the section data and storing the section data file in the storage device provided in the mobile unit, said section data file being continuously supplemented and/or updated with section data newly generated by the mobile unit.

Col. 17:34-55 (Claim 1).

Dr. Adolph characterized the essence of claim 1 as follows: "Claim 1 does not describe a

method for navigating, or a method for avoiding traffic, or even a method for making digital

maps. Rather, Claim 1 describes a method for generating, updating, and storing particular types

of data with specific characteristics using a mobile unit" *See* Ex. B (Fed. Cir. brief) at 20.

Dependent claim 11 adds "the steps of transmitting the section data files of more than one

mobile unit to at least one central computer located in a location remote from said at least one

mobile unit and having said central computer merge said section data files at least at

predetermined time intervals into at least one overall route file." '836 Patent, Col. 18:35-41.

Dependent claim 22 adds "the step of determining absolute coordinates of the mobile unit

using the Global Positioning System." Col. 19:21-23. Dependent claims 23 and 24 claim,

respectively, "the steps of recording and storing a time $T_i$ of arrival at a node $P_i$ of the traveled distance data in addition to recording and storing geographical coordinates $x_i$, $y_i$ in the storage device of the mobile unit," (Col. 19:24-29), and "the steps of assigning and storing an absolute time of motion $T_{jk}$ to the sections $P_jP_k$ of the traveled distance data."  Col. 19:30-32.

2.    The Claimed Method Is Performed Using Generic Hardware and Software

The asserted claims do not recite any specialized components needed to practice the claimed methods, and the patent specification confirms the claimed method can be performed using generic hardware and software in a conventional manner.  To determine the position of the mobile unit, "[a] navigation GPS (global positioning system) receiver produces data which give the geographical position of the control device of the mobile unit."  Col. 8:26-29.  Thus, the GPS device does what a GPS device is supposed to do—it identifies geographic coordinates.

Similarly, to determine the direction of travel, "[a] compass . . . produces a signal which corresponds to the direction of the mobile unit or the vehicle."  Col. 8:32-36.  "The compass can be supplemented or replaced by a gyroscope," (Col. 8:36-39), and "[a] mileometer [*sic*] generates an impulse for each unit of distance covered."  Col. 8:41-42.  Thus, the specification recites generating data using the same tools pilots and sailors have used for ages to record their positions and directions by dead reckoning or inertial navigation.[5]

The specification further recites a laundry list of "well known" general purpose computer components, described only in functional terms, used to perform the claimed method:

> The control device 2 also contains an interface 20 to convert the output signals of devices 4 to 14 into digital signals that are then processed within device 2; a micro processor 22 executing several different computational procedures; a ROM 24, which, among other things, contains the working programs for the micro processor 22; and a RAM 26 with

---

[5]    The National Aeronautics & Space Administration (NASA) website provides additional background on these navigation systems:  http://virtualskies.arc.nasa.gov/navigation/1.html (last visited July 28, 2015).

5

direct access into which the information and current data required to execute the programs are written and from which said information is read out. . . .

The data which is derived from signals generated by the devices 4 to 14 are evaluated and stored in a trip storage unit or motion storage unit 40, respectively, a section data storage unit 42, a section data file storage unit 44, a short-term storage unit 46 and an event storage unit 48. The function and the contents of the storage units named above are explained in detail below.

The storage units named above are connected by a data bus 50. *The construction of these units is well known and does not need to be further described here*.

Col. 8:64-9:31 (emphasis added).

The specification also describes the "well known" components used to perform

dependent claim 11 using similar generic, functional terms:

The central computer 62 contains a microprocessor 66 with a ROM 68, and a RAM 70, an overall route file storage unit 72, a short-term storage unit 74, and an event storage unit 76. An input/output device 78 transmits data to and from the central computer 62. *The construction of all of these constituent units, connected over a data bus 80, is well known*.

Col. 9:38-44.

## III.    LEGAL STANDARDS FOR PATENT ELIGIBILITY

### A.    The Supreme Court's Two-Step *Alice* Framework

Section 101 of the Patent Act defines patent-eligible subject matter: "Whoever invents or

discovers any new and useful process, machine, manufacture, or composition of matter, or any

new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and

requirements of this title."  35 U.S.C. § 101.  Despite Section 101's apparent wide berth, the

Supreme Court has created, over the span of more than 150 years of case law, three exceptions to

patent eligibility:  "laws of nature, physical phenomena, and abstract ideas."  *See Bilski v.*

*Kappos*, 561 U.S. 593, 601-02 (2010).  These concepts are not eligible for patent protection

because they are "basic tools of scientific and technological work" and the "monopolization" of

such concepts through the grant of a patent "might tend to impede innovation more than it would

6

tend to promote it." *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1293 (2012).

As pertinent here, abstract ideas include patents drawn to "method[s] of organizing human activity." *Alice,* 134 S.Ct. at 2356-57. Although accounting and billing are often given as examples of methods of organizing human activity, a patent does not need to claim a commercial practice to be abstract. "An idea is abstract if it has 'no particular concrete or tangible form.'" *TLI*, 2015 WL 627858 at *6-7 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)). Furthermore, even though "a 'method that can be performed by human thought alone' is an abstract idea," (*TLI*, 2015 WL 627858 at 13 (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011)), the implementation of an abstract idea on "some unspecified, generic computer" is not "enough to transform an abstract idea" into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2360. "Any transformation [of data] from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis." *Ultramercial,* 772 F.3d at 717.

The Supreme Court has set forth a two-step "framework for distinguishing patents that claim . . . abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 132 S. Ct. at 1296-97. Step one requires a determination of whether the claims are directed to an abstract concept, and step two requires consideration of "whether the additional elements [of the claim] transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. Step two requires an analysis of whether the claims "contain other elements or a combination of elements, sometimes referred to as an 'inventive concept,' sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the" abstract idea. *Mayo*, 132 S. Ct. at 1294 (citation omitted).

7

When undertaking the second step of the *Alice/Mayo* analysis, the Supreme Court has cautioned that a patent reciting "functional and generic" components, such as a "data processing system," "communications controller," and "data storage unit" does not render an abstract idea patentable because "[n]early every computer will include [those generic components for] performing the basic calculation, storage, and transmission functions." *Alice,* 134 S. Ct. at 2360. Heeding this guidance, the late Judge Pfaelzer observed in one of her last published opinions that the second step of the *Alice/Mayo* framework considers whether the technology recited in the patent "put[s] forth an innovative and unconventional method" or instead "does nothing more than limit the abstract idea to a technological environment." *Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1177 (C.D. Cal. 2014).

To illustrate what is required for a patentee to clear the second step of *Alice/Mayo*, Judge Pfaelzer issued another decision on the same day as *Enfish*, upholding patents "directed to a form of error correction code called an irregular repeat and accumulate ('IRA') code," finding that "[w]hen claims provide a specific computing solution for a computing problem, these claims should generally be patentable, even if their novel elements are mathematical algorithms." *Cal. Inst. of Tech. v. Hughes Commc'ns, Inc.*, 59 F. Supp. 3d 974, 978, 993 (C.D. Cal. 2014). The Federal Circuit adopted similar reasoning one month later in *DDR Holdings, LLC v. Hotels.com, L.P.* upholding a patent where "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." 773 F.3d 1245, 1257 (Fed. Cir. 2014). *DDR Holdings*, however, did not disturb the paradigm that "after *Alice*, there can remain no doubt [that] recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." *Id*. at 1256.

8

**B.**     <u>**Patent Eligibility Is a Threshold Question of Law That Should Be Addressed Before Further Proceedings on Remand**</u>

Invalidity under § 101 is a question of law.  *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013).  "Accordingly, a court may invalidate patent claims directed to non-eligible subject matter on the pleadings" by motion filed under Rule 12(c).  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 816 (E.D. Va. 2014) (granting motion filed after remand from Federal Circuit); Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").

Following *Alice*, patent eligibility has become a threshold question that should be considered before other issues.  As this Court recently observed, "§ 101 is now a much finer patent eligibility filter" because "patentability [under § 101] is a higher bar."  *TLI*, 2015 WL 627858 at *6 (citation omitted).  The reason Section 101 now takes precedence is that the "robust application of section 101 ensures that the nation's patent laws remain tethered to their constitutional moorings."  *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J. concurring).

Weeding out patents that claim abstract ideas (such as recording routes traveled) helps "spare both litigants and [the] courts years of needless litigation."  *Id.*  Indeed, Judge Mayer has gone so far as saying that "[u]ntil it is determined that the claimed subject matter is even *eligible* for patent protection, a court has no warrant to consider subordinate validity issues . . . ."  *Id.* at 995 (emphasis added).  And since *Alice* was handed down in June 2014, numerous courts have entertained and granted motions to invalidate patents on Section 101 grounds.[6]

---

[6]     Appendix A, attached hereto, contains a list of all cases known to counsel for TomTom invalidating patents on Section 101 grounds since the Supreme Court's *Alice* decision.

## IV.    THE ADOLPH PATENT IS INVALID UNDER § 101

### A.    The Patent Claims the Abstract Idea of Recording Trip Data

The '836 patent claims the abstract idea of recording a route taken from point A to B. *See* Section II.B.1, *supra*. Recording the data points in a route and then compressing that data down to the characteristic points of the route has "no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. "It is a building block, a basic conceptual framework for organizing information." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, Case No. 2014-1194, 2015 WL 4113722, *24 (Fed. Cir. July 9, 2015). *See also TLI*, 2015 WL 627858 at *8 ("Nor is there any doubt that the idea of taking, organizing, classifying, and storing photographs qualifies as an abstract idea under *Alice* and *Mayo*. It is an abstract idea in that it describes a scheme or concept not tied to a particular concrete application.").

The patent specification confirms that the claimed invention has no particular concrete or tangible form. The patent teaches that in "[a] typical working sequence," "the route covered is recorded by a series of points" called "traveled distance data." '836 Patent, Col. 9:45-63. Next, "section data are generated from the traveled distance data or route data" by "compressing the traveled distance data by dropping individual points" and "choosing those points . . . which are most characteristic in defining a section of the route." Col. 10:8-14. The remaining points ("[t]he sections . . . calculated from the route nodes") are then saved in a file. Col. 10:19-21. The patented invention is therefore nothing more than a "scheme or concept" for storing and organizing trip data. *TLI*, 2015 WL 627858 at *8.

The '836 patent resembles many other patents claiming data collection and processing that the Federal Circuit has held invalid since *Alice*:

For example, in *Digitech Image Technologies v. Electronics for Imaging, Inc.*, a patent drawn to "a process of taking two data sets and combining them into a single data set, the device

10

profile" was held invalid because the patent claim recited nothing more than the abstract idea of "taking existing information…and organizing this information into a new form."  758 F.3d 1344, 1351 (Fed. Cir. 2014).  The Federal Circuit explained that the recitation of a "device profile" within a digital image processing system did not transform the abstract idea, because a device profile "is not a tangible or physical thing and thus [the claim] does not fall within any of the categories of eligible subject matter."  *Id.* at 1349.

In *Ultramercial*, the Federal Circuit invalidated a patent directed to the abstract idea of using advertising as a currency through the Internet.  772 F.3d at 715-16.  That patent recited a "method for distribution of products over the Internet via a facilitator" comprised of eleven separate steps; however, because those steps were nothing more than "routine, conventional activity" and "data-gathering steps," they were not enough to transform the abstract idea into something patent-eligible.  772 F.3d at 712, 715-16.

In *Content Extraction v. Wells Fargo Bank*, claims "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" were held invalid.  776 F.3d 1343, 1347 (Fed. Cir. 2014).  Even though the claims in *Content Extraction* required technology, the claimed invention was still held unpatentable because the "claims merely recite the use of this existing scanning and processing technology to recognize and store data from specific data fields."  *Id.* at 1348.

And in *buySAFE, Inc. v. Google, Inc*, claims reciting a method of receiving and processing a request for obtaining a "transaction performance guaranty" through a "computer application program" were held invalid.  765 F.3d 1350, 1352 (Fed. Cir. 2014).  The Federal Circuit explained that despite some required technology, "[t]hat a computer receives and sends

11

the information over a network—with no further specification—is not even arguably inventive." *Id.* at 1355.

Indeed, even before *Alice*, the Federal Circuit held patents that claim manipulating data to be patent-ineligible. In *Accenture*, a patent claiming "transmitting information," "determining characteristics of the information," "applying characteristics of the information" through "a plurality of levels," "storing the updated information," and "generating a historical record" to aid processing insurance records was held invalid. 728 F.3d at 1339. The Federal Circuit explained the claims were patent-ineligible because they merely recited "generalized software components arranged to implement an abstract concept on a computer." *Id.* at 1345. Similarly, in *CyberSource*, claims directed to a "method for verifying the validity of credit card transaction over the Internet" were held invalid because "even if some physical steps are required to obtain information from the database (e.g., entering a query via a keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability." 654 F.3d at 1370, 1372.

Trial courts have also invalidated patents far more complex and technical than the '836 patent. Notably, in *Thales Visionix, Inc. v. United States*, the Court of Federal Claims invalidated a patent claiming "a 'system' consisting of two inertial tracking sensors, one mounted on the tracked object and the other on a moving reference frame, and a receiver configured to process the information . . . for determining the orientation of the tracked object relative to the moving reference frame." *See* Case No. 14-513C, 2015 WL 4396610, *1 (Fed. Cl. July 20, 2015). Even though this system was used in the helmet-mounted displays in F-35 fighter jets and a significant amount of technology was required to practice the patented invention, the court still found the patent invalid because "the solution lies in the mathematical formulae, not the generic devices" used in the invention:

> [T]he independent claims of the '159 Patent are directed to mathematical equations for determining the relative position of a moving object to a moving reference frame. Derived from Newtonian principles of motion and borrowing the mathematics that an inertial navigation system uses to track an airplane relative to a rotating earth, ***the navigation equation is undoubtedly a complex mathematical concept***, and a solution to the problem of tracking two moving objects in relation to each other.   However, ***the Court finds that this concept is a building block of human ingenuity, and the solution lies in the mathematical formulae, not the generic devices listed in the system claim***.

*Id*. at *5 (emphasis added, internal quotations and citations omitted).

Likewise, in *Enfish*, the Central District of California invalidated two patents "directed to an information management and database system" that "improve[d] upon prior art by employing a flexible, self-referential table to store data."  56 F. Supp. 3d at 1169.  The use of computers and databases in a new manner did not take the patent out of the realm of the abstract:

> The fact that the patents claim a 'logical table' demonstrates abstractness. The term 'logical table' refers to a logical data structure, as opposed to a physical data structure . . . In essence, the claims capture the ***concept*** of organizing information using tabular formats. As such, the claims preempt a basic way of organizing information, without regard to the physical data structure.

*Id*. at 1176.

Similar to all the cases discussed above, the '836 patent is directed to an abstract idea and claims nothing more than processing trip data; it therefore fails under *Alice*.

Additionally, although "the § 101 analysis only needs to be carried out with respect to a 'representative' claim and the results of that analysis can then be applied to the remaining claims in the patent," the asserted dependent claims of the '836 patent "are directed to the same abstract idea" as independent claim 1.  *TLI*, 2015 WL 627858 at *9.  Claim 11 simply adds transmitting the data to a central computer, claim 22 specifies using GPS devices to record points, and claims 23-24 only add recording the time of travel.  *See* Section II.B.1, *supra*.  None of these dependent claim limitations alters the nature of the abstract idea claimed by the '836 patent—recording points traveled and dropping the intermediate points.

13

**B.**      **The Patent Claims Add Nothing To The Claimed Abstract Idea**

The asserted claims lack any elements that add an inventive concept to the claimed abstract idea.  Claim 1 does not identify any specific hardware or software for "generating" the claimed data.  '836 Patent, Col. 17:35-55.  Rather, the data can be generated using at most generic equipment (GPS receivers, compasses, gyroscopes, and/or milometers) in a conventional manner.  *See* Section II.B.2, *supra*. Claim 1 also does not identify any specific hardware or software for "storing" data in the "storage device," (*id*.), and the specification states that storage devices are any "well known" devices for storing data.  Col. 9:28-30.  "Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  *Digitech*, 758 F.3d at 1351.

The dependent claims also recite generic components performing conventional functions (*e.g.,* "transmitting the section data files . . . to at least one central computer" (claim 11) and "determining absolute coordinates . . . using the Global Positioning System" (claim 22)), or merely recite additional types of data (*e.g.,* "storing a time . . . of arrival" (claim 23) and "storing an absolute time of motion" (claim 24)).  Thus, similar to *Thales*, where even if "the concept of tracking the motion of a moving object relative to a moving reference frame may have been novel and nonobvious, *the claimed system does nothing to ground this abstract idea in a specific way*."  2015 WL 4396610 at *6 (emphasis added).

Dr. Adolph may argue that his claimed method is novel and non-obvious when performed using "a destination tracking system of at least one mobile unit" (although TomTom contends the claims are also invalid as anticipated and obvious).  However, only performing the claimed method on particular destination tracking systems represents a field of use limitation, which does not save patentability under Section 101.  The Supreme Court stated in *Alice* that "patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular

14

technological environment." 134 S. Ct. at 2358. To be patentable, the claims must "put forth an innovative and unconventional method" for processing data. *Enfish*, 56 F. Supp. 3d at 1177. Here, "[w]hat is dressed up in the 'patent-ese'-type convoluted language is nothing more than" the concept of recording data points and dropping intermediate points along straight lines of travel. *TLI*, 2015 EL 627858 at *13.

The specification also acknowledges that recording trip data was well known in the prior art, further emphasizing the conventional nature of the '836 patent. For example, the '836 patent describes prior art that also used a receiver to "continuously" create "trip route data":

> [T]he method and system described in DE 195 26 148 C2 successively stores the momentary vehicle speed and its current position which are continuously determined by means of a receiver tracking signals from a navigational satellite system, said receiver being located in a storage unit in each vehicle of a sampling fleet. The stored locations are part of the trip route data which are transmitted time-dependently and/or route-dependently by the sampling vehicle to a traffic control computer.

> Col. 2:34-43; *Enfish*, 56 F. Supp. 3d at 1175 ("conventional elements do not constitute

everything in the prior art, although conventional elements and prior art may overlap").

Accordingly, nothing in the '836 patent adds significantly more to the abstract idea of recording and processing points traveled. The patent therefore fails the second step of the *Alice* analysis.

## V.    CONCLUSION

For the foregoing reasons, TomTom respectfully requests that the Court hold the Adolph patent invalid under Section 101.

Dated: August 6, 2015

*/s/ Brian H. Pandya*
James H. Wallace, Jr. (admitted *pro hac vice*)
Brian H. Pandya (VSB No. 72233)
Karin A. Hessler (VSB No. 76834)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
jwallace@wileyrein.com
bpandya@wileyrein.com
khessler@wileyrein.com

COUNSEL FOR DECLARATORY JUDGMENT
PLAINTIFF TOMTOM, INC. AND
COUNTERCLAIM DEFENDANTS TOMTOM
INTERNATIONAL B.V. AND TOMTOM
NORTH AMERICA, INC.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing document was electronically filed and served on counsel of record via the Court's CM/ECF system on August 6, 2015.

/s/Brian H. Pandya
Brian H. Pandya

16

# Appendix A

*Digitech Image Techs., LLC v. Elecs. For Imaging, Inc*., 758 F.3d 1344, 1349 (Fed. Cir. 2014) (finding that a "device profile" within a digital image processing system "is not a tangible or physical thing and thus does not fall within any of the categories of eligible subject matter");

*Planet Bingo, LLC, v. VKGS, LLC*, 576 Fed.App'x. 1005, 1006, 1008 (Fed. Cir. 2014) (invalidating claims that "recite computer-aided methods and systems for managing the game of bingo" because "the claims recite a generic computer implementation of the covered abstract idea");

*buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir. Sept. 3, 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.");

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712, 715 (Fed.Cir. 2014) (invalidating a "claim directed to a method for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content" because the claims merely "instruct the practitioner to implement the abstract idea with routine, conventional activity.")

*Content Extraction and Transmission, LLC v. Wells Fargo Bank Nat'l Ass'n, et al*., 776 F.3d 1343, 1344 (Fed. Cir. 2014) (affirming invalidity ruling with respect to claims that "recite a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory.")

*In re BRCA1 - and BRCA2 – Based Hereditary Cancer Test Patent Litig*., 774 F.3d 755, 764 (Fed. Cir. 2014) (holding that limitations requiring "1) hybridizing a BRCA gene probe and 2) detecting the presence of a hybridization product" and "1) amplification of the BRCA1 gene and 2) sequencing of the amplified nucleic acids . . . do not add 'enough' to make the claims as a whole patent-eligible.")

*Allvoice Developments US LLC v. Microsoft Corp*., No. 14-1258, 2015 WL 2445055 (Fed. Cir. May 22, 2015) (affirming decision to invalidate claims directed toward an interface for manipulating audio recognition data.  The court found the claims invalid because they only listed software instructions and failed to describe any tangible embodiment of the information.)

*Ariosa Diagnostics, Inc. v. Sequenom, Inc*., 788 F.3d 1371 (Fed. Cir. 2015) (affirming decision to invalidate claims directed toward a method of performing a non-invasive genetic test on a fetus by analyzing fetal DNA that is present in the mothers bloodstream.  The test only involves well-known laboratory methods, so the purported invention is really just the discovery of the presence of fetal DNA in a mother's bloodstream.)

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) (affirming decision to invalidate claims directed toward a method of sending out product offers and a variety of prices and using response data to determine an optimal price.  The court found this to be a broad claim of an abstract idea with no meaningful limitation other than the use of generic computer technology.)

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*, No. 14-1194, 2015 WL 4113722 (Fed. Cir. July 9, 2015) (affirming PTAB decision to invalidate claims direct toward a method and apparatus of pricing products in multi-level product and organizational groups.)

*Internet Patents Corp. v. Active Network, Inc.*, No. 14-1048, 2015 WL 3852975, at \*5 (Fed. Cir. June 23, 2015) (affirming invalidity ruling for claims directed towards a method of retaining data in online forms after use of the Back and Forward website navigation functions. The court agreed with the district court that the claims "contain no restriction on how the result is accomplished" and "the mechanism for maintaining the [data in the online form] is not described, although this is stated to be the essential innovation," and concluded that the claims do not contain anything beyond the abstract concept and a direction to carry out using generic computer technology.)

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, 55 F. Supp. 3d 544, 550 (D. Del. 2014) (invalidating a claim of the patent-at-issue because it "merely covers the application of what has for a long time been conducted solely in the mind to modern, computerized, telephony networks");

*DietGoal Innovation, LLC v. Bravo Media, LLC*, 33 F. Supp. 3d 271, 285 (S.D.N.Y 2014) (invalidating the patent-at-issue because it "do[es] no more than 'simply instruct the practitioner to implement the abstract idea . . . on a generic computer'") (quoting Alice, 134 S.Ct. at 2359); *aff'd*, 599 Fed.Appx. 956 (Fed. Cir. 2015)

*CMG Fin. Servs., Inc. v. Pacific Trust Bank, F.S.B.*, 50 F.Supp.3d 1306, 1313 (C.D. Cal. 2014) ("[W]hether the claimed methods and systems can be completed on a piece of paper or require the use of a specialized banking computer, are insignificantly probative to a collateral issue or are entirely irrelevant to our § 101 analysis . . . .");

*Loyalty Conversion Sys., Corp. v. Am. Airlines, Inc.*, 66 F.Supp.3d 829, 831, 833, 835 (E.D. Tex. 2014) (invalidating patents claiming "a method enabling a customer to convert loyalty award credits" and "a method in which a computer provides one or more Web pages that can be used by clients to convert non-negotiable loyalty award points," explaining that the patents-at-issue are "not fundamentally different from the kinds of commonplace financial transactions that were the subjects of the Supreme Court's recent decisions" in Bilski and Alice);

*Walker Digital, LLC v. Google, Inc.*, 66 F.Supp.3d 501, 511 (D. Del. 2014) ("Even accepting that the use of a computer increases speed and efficiency of performing the steps of the claims, and improves the likelihood of preserving the anonymity of the first and second parties, these characteristics do not save the claims.");

*Tuxis Techs., LLC v. Amazon.com, Inc*., No. 13-1771, 2014 WL 4382446, at \*1, 5 (D. Del. Sept. 3, 2014) (invalidating a claim reciting a "method for providing offers in real time . . . utilizing an electronic communications device . . ." because "[t]he computer performs nothing more than purely conventional steps that are well-understood, routine, and previously known to the industry");

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736, 2014 WL 4379587 at \*10, \*14 (D. Del. Sept. 9, 2014) (invalidating a claim related to "the correlation between a particular genetic variation and sprinting, strength or power performance," finding it claimed a natural process, and "because claim 1 does not confine its reach to a particular inventive application of the recited natural correlation, there is a danger that future innovation based on the correlation will be stifled.")

*Eclipse IP LLC v. McKinley Equip. Corp*., No. 14-cv-154, 2014 WL 4407592, at \*6-7 (C.D. Cal. Sept. 4, 2014) (invalidating a patent claiming a "method for communications in connection with a computer-based notification system," and explaining that the Alice "analysis fits the [patent's] claims precisely");

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A*., No. 8:11-cv-2826, 2014 WL 4540319, at \*5 (M.D. Fla. Sept. 11, 2014) (relying on Alice to invalidate a method of and asystem of automated saving or automated charitable giving);

*Open Text S.A. v. Alfresco Software Ltd*., No. 13-cv-04843-JD, 2014 WL 4684429, at \*1, 5 (N.D. Cal. Sept. 19, 2014) (invalidating patents on "systems and methods for carrying on marketing dialogues" under Alice, explaining that "both patents implement the basic marketing scheme on a generic computer system without any meaningful limitations").

*McRO, Inc. v. Atlus U.S.A*., No. 13-1870, 2014 WL 4772196, at \*8 (C.D. Cal. Sept. 22, 2014) (invalidating claims directed to "automatically animating lip synchronization and facial expression of three-dimensional characters.")

*Cogent Med., Inc. v. Elsevier Inc*. 70 F.Supp.3d 1058, 1063 (N.D. Cal. 2014) (invalidating patent that "claims the abstract idea of maintaining and searching a library of information.")

*Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, No. 12-394, 2014 WL 5507637 at \*1, \*8-9 (D. Del. Oct. 30, 2014) (invalidating claims related to "amplifying genomic DNA" and "analyzing the amplified DNA" because"[t]he asserted claim recites a series of steps to manifest the natural law - that is, to detect the natural correlations between coding and noncoding sequence.")

*Wolf v. Capstone Photography, Inc*., No. 2:13-cv-9573, 2014 WL 7639820 at \*10, \*12 (C.D. Cal. Oct. 28, 2014) (invalidating patent claims that were directed to the abstract idea of "providing event photographs organized by participant, as applied using the internet," and holding that "the independent claims do nothing more than recite a series of conventional steps carried out using basic camera and computer functions and mostly essential to placing searchable event photographs online for inspection and ordering")

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F.Supp.3d 813, 825 (E.D. Va. 2014) (invalidating claims directed to correlating, generating, compiling, and reporting network accounting records, finding that "Amdocs's asserted claims recite such conventional operation, in such a general way, that even if the inventor had developed an actual working system, the patent claims could foreclose fields of research beyond the actual invention")

*Enfish, LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167, 1176 (C.D. Cal. 2014) (invalidating claims directed towards a "method for storing and retrieving data in a computer memory" because the claims are directed to abstract ideas and the limitations only include "conventional elements" that, "when viewed individually or in a combination, do not sufficiently cabin the claims' scope")

*Hemopet v. Hill's Pet Nutrition, Inc.*, No. 12-1908, slip op. at *10 (C.D. Cal. 2014) ("[T]he formulation and preparation of pet food is nothing more than an extension of the abstract idea of 'determine' a dog or cat's diet. The creating or formulating processes directed in the claims are couched in the most general terms, lacking any specifics that would allow a practitioner to learn how to actually develop or produce such a diet.")

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs.*, Inc. No. 12-1138, 2014 WL 7149400 at *6-7 (D. Del. Dec. 15, 2014) (holding that "the abstract idea embodied by the claim is a conventional business practice utilized by bankers or financial institutions," and that "[t]he computer components are being employed for basic functions, including storage, transmitting and receiving information, and, the court concludes that such components are not 'specific' or 'special purpose' computers.")

*IPLearn, LLC v. K12 Inc.*, No. 11-1026, 2014 WL 7206380 at *5 (D. Del. Dec. 17, 2014) (holding claims to be patent ineligible, and highlighting the patent specification which itself states: "First, the educational practices were described as being 'decades' old. Second, the educational testing practices that the inventors considered to be desirable were all well-known, as evidenced by the inventors' description of the undesirable practices as being 'typical' and 'usual.' Implicit in the inventors' recitation is that the better practices were known, but rarely used. Third, the solution is described as '[add] computers.'")

*Opentv, Inc. v. Netflix, Inc. et al.*, No. 14-cv-1525, 2014 WL 7185921 at *7 (N.D. Cal. Dec. 16, 2014) (invalidating two of three patents-at-issue as either relating to "merely a computer/internet implementation of an old idea" because "even assuming the claims are limited to the online technology context, plaintiffs have not shown how the claims describe anything more than the abstract idea of attempting to provide as much appropriately-selected content to users as possible[.]")

*Cloud Satchel, LLC v. Amazon.com, Inc. et al*, No. 13-941, 2014 WL 7227942 at *8 (D. Del. Dec. 18, 2014) ("Although the court understands plaintiff's argument that the steps of 'transmitting' and 'receiving' may not have been conventional practices in the field of computing a[t] the time of invention, these steps nonetheless do nothing more than recite functions that 'can be achieved by any general purpose computer without special programming.'")

*Intellectual Ventures I, LLC v. Manufacturers and Traders Trust Co.*, No. 13-1274, 2014 WL 7215193 at *7 (D. Del. Dec. 18, 2014) (invalidating three patents because they "merely recite the performance of some business practice known from the pre-internet world along with the requirement to perform it on the Internet.")

*MyMedicalRecords, Inc. v. Walgreen Co.*, No. 2:13-631, 2014 WL 7339201 at *1, *5 (C.D. Cal. Dec. 23, 2014) (invalidating claims directed toward a "method of collecting, accessing, and managing personal health records in a secure and private manner" because they claim "nothing more than the performance of a long-known abstract idea from the pre-Internet world—collecting, accessing, and managing health records in a secure and private manner—on the Internet or using a conventional computer.")

*AutoAlert, Inc. v. Dominion Dealer Solutions, LLC et al.*, No. 12-1661, slip op. at *2, *8 (C.D. Cal. Dec. 23, 2014) (invalidating claims directed to a "system and method for assessing and managing financial transactions" because they use generic computer functions to "determining when a favorable vehicle sales opportunity exists by performing calculations on potential loan or lease payments," which is a "fundamental economic practice long prevalent in our system of commerce.")

*Morsa v. Facebook, Inc.*, No. 14-161, 2014 WL 7641155 at *5, *8 (C.D. Cal. Dec. 23, 2014) (invalidating claims are "directed to two abstract ideas: (1) determining the advertisement that will be shown to a consumer based on that consumer's demographic information; and (2) using advertiser bids to determine whether and how an advertisement will be displayed" because they use "only generic computer elements.")

*Kombea Corp. v. Noguar L.C.*, No. 13-957, 2014 WL 7359049 at *1, *3, *7 (D. Utah Dec. 23,2014) (invalidating claims directed towards "a telemarketing system that allows an agent to use prerecorded scripts, live voice, and interjections during a telemarketing call to tailor the call to potential customers while giving the impression that the conversation is person-to-person" because they relate to "a fundamental economic practice and a method of organizing human activity," and "do nothing more" than claim these "abstract ideas" and discuss "how to execute those ideas with the help of a computer.")

*Morales v. Square, Inc.*, No. 5:13-cv-1092, 2014 WL 7396568 at *7-8 (W.D. Tex. Dec. 30, 2014) (invalidating a claim reciting a process that "can be distilled to (1) generating a unique signal using an audible tone, and (2) relaying the signal for verification and processing using either radio frequency or telephone lines," finding the claim to cover only the abstract concept of signal processing and involve only "generic hardware" and is therefore not "sufficient to transform the abstract idea into a patentable claim.")

*Bascom Research, LLC v. Linkedin, Inc.*, No. 12-cv-6293, 2015 WL 149480 at *9, *12 (N.D. Cal. Jan. 5, 2015) (invalidating claims directed to establishing and characterizing a relationship between two objects in a network because the methods described are "not meaningfully different from classifying and organizing data" and they do not "require anything beyond generic and conventional computer structures and unspecified software programming.")

*Tenon & Groove, LLC v. Plusgrade S.E.C.*, No. 12-1118, 2015 WL 1133213 at \*2, \*4 (D. Del. Mar. 11, 2015) (invalidating claims directed toward a "method for concurrent optimization of value in a transaction between two entities" because they merely recite a normal business practice performed using computer technology and the internet, and "the court [was] unable to discern any inventive element that meaningfully limits the scope of the claims.")

*Mortgage Grader, Inc. v. Costco Wholesale Corp. et al.*, No. 13-00043, 2015 WL 778125 at \*5, \*7 (C.D. Cal. Jan. 12, 2015) (invalidating claims directed toward "a method for users to assess their borrowing ability for a loan without revealing their identities to the lenders until they are ready" because nothing in the claim "purports to improve the functioning of the computer itself.")

*E. Coast Sheet Metal Fabrication Corp. v. Autodesk, Inc.*, No. 12-cv-517, 2015 WL 226084 at \*5, \*9 (D.N.H. Jan. 15, 2015)  (invalidating claims directed toward the abstract concept of "mapping geometrical information components to standard fittings using … criteria[]" because the patents do not disclose "how the invention does what it does[,]" instead, they merely "recite[] the use of a generic computer to perform generic computer operations[.]")

*Synopsys, Inc. v. Mentor Graphics Corp.*, No. 12-6467, 2015 WL 269116 at \*4-5 (N.D. Cal. Jan. 1, 2015) (invalidating claims directed toward "various algorithms for determining the hardware components and layout of an [integrated circuit] from a user's description of what the user needs the chip to do" because "skilled designers had been inferring the necessary parts and connections for ICs long before the [] patent's issued.")

*Open Text S.A. v. Box, Inc.*, No. 13-cv-4910, 2015 WL 269036 at \*3 (N.D. Cal. Jan. 20, 2015) (invalidating claims directed toward "a system for providing a collaborative workspace" using a network and web browsers because it is simply an abstract idea requiring the use of several conventional technologies in a routine way.)

*Certusview Techs., LLC v. S&N Locating Servs., LLC*, No. 2:13cv346, 2015 WL 269427 at \*3, \*19 (E.D. Va. Jan. 21, 2015) (invalidating claims directed toward "a method for generating a searchable electronic record of a locate operation" (a locate operation is a process where a specialist determines the location of underground structures in a proposed excavation site) because they "simply recite[] the use of common computer components, performing generic computer functions, to accomplish via such components what persons in the locate operations industry had traditionally done by hand[.])

*The Money Suite Co. v. 21st Century Ins. and Fin. Servs. et al.*, No. 13-984, 2015 WL 436160 at \*1, (D. Del. Jan. 27, 2015) (invalidating claims directed toward a "method … to conduct a search of multiple financial products for efficient quoting" and rejecting plaintiff's argument that the use of a "front-end network gateway" elevates the claim to more than just an abstract idea.)

*Vehicle Intelligence and Safety, LLC v. Mercedes-Benz USA, LLC and Daimler AG*, No. 13-4417, 2015 WL 394273 at \*1, \*8 (N.D. Ill. Jan. 29, 2015) (invalidating claims directed toward "methods and systems using . . . expert systems to screen equipment operators for [physical, medical, or emotional] impairment' because the term "expert system" was construed

to consist of generic computer parts performing actions that "could be performed entirely in the human mind.")

*Minitab, Inc. v. Engineroom, LLC*, No. 4:12-cv-2170, slip op. at *2, *18 (M.D. Pa. Feb. 3, 2015) (invalidating claims direct towards "a method of automatically applying hypothesis testing to [a] data set" (software to help individuals without knowledge of statistics analyze data) because they recite "only well-known, conventional" statistical methods being performed by a computer.)

*In re TLI Communications LLC Patent Litigation*, MDL No. 1:14md2534, 2015 WL 627858 at *1, *11 (E.D. Va. Feb. 6, 2015) (invalidating claims directed toward an apparatus and method that "simplifies" and "optimizes the communication of image data." The court rejecting plaintiff's attempt to characterize the claimed elements as more than simply generic computer technology based on the fact that the server can "carry out automatic archiving based on classification information.")

*Enpat, Inc. v. Tenrox, Inc.*, No. 6:13-948, 2015 WL 541673 at *5 (M.D. Fla. Feb. 10, 2015) (invalidating claims directed towards software for efficient, automated email-based project planning and management, rejecting the plaintiff's argument that the case is analogous to Diamond v. Diehr because the claims do not "use computers in a novel way to solve a problem that has plagued project planning.")

*Essociate, Inc. v. Clickbooth.com, LLC*, No. 13-01886, 2015 WL 1428919 (C.D. Cal. Feb. 11, 2015) (invalidating claims directed towards targeting advertisements to customers using "affiliate systems" of merchants because they claim a known business practice employing only the internet and generic computers)

*Intellectual Ventures I, LLC et al. v. Motorola Mobility, LLC*, No. 11-908, 2015 WL 846532 at *1, *8 (D. Del. Feb. 24, 2015) (invalidating claims directed toward "a method and corresponding system for distributing updates … to a plurality of uncoordinated user stations via a non-proprietary network" because the "claims apply conventional computer processes to automate the delivery of software updates.")

*Clear With Computers, LLC v. Altec Industries, Inc. et al.*, No. 14-0079, 2015 WL 993392 at *4-5 (E.D. Tex. Mar. 3, 2015) (invalidating claims directed toward a computer program and a computer-implemented method that asks customers questions, receives their answers, selects, based on the answers, a picture and/or product description from a database, and consolidates the information into a sales proposal. The court found that the claims "contain no meaningful limitations preventing the patentee from obtaining a monopoly of the abstract idea itself" and they "invoke computer technology only to take advantage of the relative ease by which a computer … [can] create individualized sales proposals[.]")

*Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-cv-570, 2015 WL 1133244 at *7 (N.D. Cal. Mar. 10, 2015) (invalidating claims directed towards computer software used for efficiently managing service tickets in an off-site IT help center. The court agreed with defendant's argument that the terms that HP argues define the invention as more than just an abstract idea

("container," container definition node," repair workflows," repair frames," etc.) are simply "idiosyncratic names to identify what are actually generic computer structures.")

*Celsis In Vitro, Inc. v. CellzDirect, Inc*., No. 10 C 4053, 2015 WL 1523818 at *8 (N.D. Ill. Mar. 13, 2015) (invalidating a patent claiming a method of freezing hepatocytes, thawing, isolating the viable cells, and repeating the process. Prior knowledge had said that hepatocytes could only go through one freeze/thaw cycle, but it was discovered that certain types could undergo multiple cycles. The court decided that the patent "amounts to a straightforward application of the truth" and therefore fails the Alice test. The court also noted that although the patent specifically deals with hepatocytes, preemption was still a concern because "if one were allowed to own a slice of the preemptive pie, that would pave the way for multiple others to claim the rest of that pie.")

*Priceplay.com, Inc. v. AOL Advertising, Inc*., No. 14-092, 2015 WL 1246781 at *3-4 (D. Del. Mar. 18, 2015) (invalidating claims directed towards a method of completing a sales transaction over the internet where the final price is partially determined by the buyers performance in some activity. The court finds the idea of "performance of a sales transaction over the internet" to be abstract, and the limitations (determining the final price based on an activity) to be similarly abstract. The limitations do fail to transform the claim into a patent-eligible idea because they "simply instruct the practitioner to implement the abstract idea with routine, conventional activity.")

*Advanced Auctions LLC, v. Ebay Inc*., No. 13-1612, 2015 WL 1415265 at *5-6 (S.D. Cal. Mar. 27, 2015) (invalidating claims directed towards a method of hosting a computer based auction over the internet. Patentee argues that the patent method improves the user experience compared to previous online auction platforms. The court determined that "the claims simply … carry out an online auction 'more like a real live auction with certain refinements which improve it for use on the internet.'" (quoting the patent specification) The court also rejects the patentees argument that the case is analogous to DDR, saying the claims "do not override any routine sequence of events" and "[t]he only variations on the abstract idea are refinements for Internet implementation.")

*CarFax, Inc. v. Red Mountain Techs., et al*., No. 1:14-1590, slip op. (E.D. VA. Mar. 30, 2015) (invalidating claims directed towards a method of underwriting an insurance policy. The claims simply state the normal steps involved in underwriting as performed on a computer, and are deemed abstract and lacking inventive concept.)

*Genetic Veterinary Sciences, Inc d/b/a Paw Print Genetics v. Canine EIC Genetics, LLC*, No. 14-1598, 2015 WL 1505669 (D. Minn. Mar. 31, 2015) (invalidating claims directed toward a method of determining whether a dog has or is predisposed to develop Exercise Induced Collapse. The court determines that the claims satisfy step one because the method serves to "identify and observe a natural law" and the claims satisfy step two because apart from the law of nature, the claims only involve well-understood, routine, conventional activity already engaged in by the scientific community.")

*OpenTV v. Apple. Inc.*, No. 14-cv-1622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) (invalidating claims directed towards a method of transmitting confidential information across unsecure channels by transmitting codes representing the information. The court finds this to be an abstract idea, where the problem and solution have existed long before computer technology, and the claims only distinguish themselves by requiring a generic computer.)

*Douglas Maurice Shortridge v. Found. Constr. Payroll Serv., LLC*, 14-4850, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) (invalidating claims directed towards a method of organizing payroll data from employees of a government contractor working on projects in multiple jurisdictions, analyzing said data, and generating reports based on said data. The court determined that although the claims involve multiple abstract ideas, this did not save them from satisfying step one of the Alice test. The lack of any non-generic hardware, or anything relating to solving a problem rooted in computer technology, meant that the claims fail the second step of Alice, and are therefore patent-ineligible.)

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14-7004, 2015 WL 1810378 at *11 (D.N.J. Apr. 20, 2015) (invalidating claims directed towards a method of tracking shipping containers by identifying them and recording where they are located. The court found that the steps of identifying containers, recording and communicating an ID code, and moving the containers are "conventional steps, specified at a high level of generality" and therefore insufficient to establish 101 eligibility.)

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777, 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) (invalidating several patents directed toward methods of ensuring security in a computer network by filtering incoming data packets, controlling access to certain data, and alerting devices to the presence of an "anomaly" somewhere in the network. The claims only recited the process in general terms and the court found them to be abstract and lacking the specificity that saved the claims in DDR.)

*Jericho Sys. Corp. v. Axiomatics, Inc.*, No. 14-cv-2281, 2015 WL 2165931 (N.D. Tex. May 7, 2015) (invalidating a claim directed toward a method and system for maintaining security by first determining what information is needed, acquiring that information, applying it to a rule or rules, and then either denying or granting access. The court found the claim to be abstract and only using generic computer technology.)

*Bascom Glob. Internet Servs, Inc. v. AT&T Mobility, LLC*, No. 3:14-cv-3942, 2015 WL 2341074 (N.D. Tex. May 15, 2015) (invalidating a claim directed toward a system of filtering internet content available to an individual using a remote ISP containing the filtering system. The court found the claims to be abstract, claiming the idea of filtering content using only generic technology. The court also rejected plaintiff's argument that the specialized ISP server limitation is sufficient to render the claims patent-eligible.)

*Electric Power Group v. Alstom, S.A.*, No. 12-06365, slip op. (C.D. Cal. May 21, 2015) (invalidating claims directed toward a system for managing electric power grids by using an integrated network between different entities to allow real-time monitoring of metrics associated with electricity management. The court rejects plaintiffs two arguments – that defendants have not provided evidence that the claims are abstract and that the claims mark an improvement over

the previous system of electricity management – because they are off the mark in the legal analysis of 101 eligibility.  The court goes on to find the claims abstract and lacking any sufficient inventive concept.)

*Kroy IP Holdings, LLC v. Safeway, Inc*., No. 2:12-cv-800, 2015 WL 3452469 (E.D. Tex. May 29, 2015) (invalidating claims directed toward a system for automatically distributing incentive rewards to individuals involving a host computer containing the incentive program information in contact with an inventory management system.  The court found the claims to be abstract because they only recite the idea of managing incentive rewards and inventory using a computer, and the role of computer technology in the claims to be only generic, well-known uses of computers and therefore insufficient to save the claims.)

*Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740 at *5-6 (N.D. Ill. Jun. 11, 2015) (invalidating claims directed toward a "method of processing a query and returning results, deriving content from those results, and then organizing and delivering that content somewhere."  The court determined that this abstract process is the sort of "building block" that the Mayo court said should not be patentable.  The plaintiff argues that the claims succed at step two because the method automatically creates "both an image and associated information" that "can be viewed offline and/or shared with others."  The court rejects this argument, concluding that there is nothing inventive about either of those features.)

*Fairwarning IP, LLC v. Iatric Systems, Inc*., No. 8:14-cv-2685, 2015 WL 3883958 at *2 (M.D. Fla. June 24, 2015) (invalidating claims directed toward a method, system, and apparatus for detecting fraud and/or identity theft by monitoring audit log data of patient medical records and applying rules to detect improper access.  The claims cover the abstract idea of "reviewing activity to detect suspicious behavior."  Although most modern identity theft is carried out using computer technology, the court reject the argument that the case is analogous to DDR, agreeing with defendant that the alleged invention is "but a modern spin … on … activity that existed in the pre internet world.")

*Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 Civ. 6909, 2015 WL 3947178 at *2 (S.D.N.Y. Jun. 29, 2015) (invalidating claims directed toward a method and apparatus for "generating capital for a project of an artist" by offering various rewards in exchange for various "levels of patronage."  The court found the claims to be direct toward the abstract idea of receiving patronage for a project and managing communication with patrons, without any concrete limitation besides the requirement to perform the idea using generic computer technology.)

*Affinity Labs of Texas, LLC v. DirecTV, LLC*, No. 6:15-cv-0030, 2015 WL 3764356 (W.D. Tex. Jul. 7, 2015) (invalidating a claim directed toward a method of providing regional radio broadcasts to listeners outside the region via the internet.  The court found the claims abstract and lacking any limitations that provide eligibility, focusing on the fact that the claims do not contain any indication of how the claimed method is achieved other than using the internet and generic technology.)

*Tranxition, Inc. v. Lenovo US, Inc.*, No. 3:12-cv-1065, 2015 WL 4203469 at *2, *12 (D. Or. Jul. 9, 2015) (invalidating claims directed toward a method and system for determining settings on a computer device and "providing an automatic migration of configuration settings from an old computer system to a new computing system without using a time consuming manual migration process." (quoting the patent specification) The court finds that the claims recite an abstract idea and the direction to apply it using computer technology and they fail step two of the Alice test because they are "entirely devoid of any detail about how the invention works.")

*Pragmatus Telecom, LLC v. Genesys Telecomms. Labs., Inc.*, No. 14-cv-026, 2015 WL 4128963 at *5-6 (D. Del. Jul. 9, 2015) (invalidating claims directed to "the abstract idea of communication between a customer and a business using a call center, automated and obfuscated along the way using certain computer, telephonic, and network services." The court said that "allow[ing] such a claim would preempt the fundamental concept of customers communicating with businesses, and more specifically customers communicating with call center agents.")

*Appistry, Inc. v. Amazon.com, Inc.*, No. 15-311, 2015 WL 4210890 (W.D. Wa. Jul. 9, 2015) (invalidating claims directed at a system of networked computers that communicate with each other to assign and coordinate tasks through a hierarchical structure by a) assigning a computer to receive incoming tasks and b) distributing those tasks among other computers for completion. The court found that the claims do no more than instruct the practitioner to implement the abstract idea of distributed processing onto generic computers that are connected through generic networks, and the claims' invocation of computers adds no inventive concept because the functions performed by the computers at each step of the process are well-understood, routine, and purely conventional.)

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, No. 14-8053, 2015 WL 4184486 at *4 (N.D. Ill. Jul. 10, 2015) (invalidating claims covering the Chicago public transit system of payment using a credit card.  The court found these "claims directed to the mere formulation and manipulation of economic relations" despite the requirement that bank information be stored locally at each transit gate to avoid latency in completing the financial transaction.)

*IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151, 2015 WL 4192092 at *4 (N.D. Cal. Jul. 10, 2015) (invalidating claims directed toward a method of learning that involves a sensor to monitor the student for signs of inattention or lack of concentration, which is connected to a computer that processes the sensor data and issues cues to help the student pay attention.  The court finds the claims abstract because a "plain reading … establishes … that they seek to implement on a computer the watchful eye of a good teacher.")

*Netflix, Inc. v. Rovi Corp.*, No. 11-cv-6591, 2015 WL 4345069 at *1, *10, *17 (N.D. Cal. Jul. 15, 2015) (invalidating 5 patents which are "relate[d] to interactive program guides" and "creating bookmarks for resuming playback across different devices". The court finds the claims of these patents abstract because they "would indeed preempt every application of the idea of using combination categories to categorize programs" and they "do not go beyond routine, conventional means of generating viewing recommendations.")

*Microstrategy, Inc. v. Apttus Corp*., No. 3:15-cv-21, 2015 WL 4425828 at *3, *7 (E.D. Va. Jul. 17, 2015) (invalidating three patents directed at the abstract ideas of report generation and data storage. The court finds the claims of the '798 and '577 patents abstract because "identifying, organizing, and presenting stored information is … 'devoid of a concrete or tangible application'", further stating that the concept of "data collection, recognition, and storage" is well-known. The court finds the claims of '303 patent abstract because "the use of a 'computer does not render an invention patentable if, absent the use of a computer, it would not have been.")