**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| TOMTOM, INC.,<br><br>         Declaratory Judgment Plaintiff,<br><br>         v.<br><br>MICHAEL ADOLPH,<br><br>         Declaratory Judgment Defendant. | Case No. 1:12-cv-528 (TSE/IDD) |

**TOMTOM'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE
PLEADINGS THAT THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101**

James H. Wallace, Jr. (admitted *pro hac vice*)
Brian H. Pandya (VSB No. 72233)
Karin A. Hessler (VSB No. 76834)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)


*Counsel for Declaratory Judgment Plaintiff
TomTom, Inc. and Counterclaim Defendants
TomTom International B.V. TomTom North
America, Inc.*

Dated: August 20, 2015

**TABLE OF CONTENTS**

**Page**

I.    Introduction ............................................................................................................1

II.   The '836 Patent Claims an Abstract Idea .........................................................2

    A.    There Is Nothing Concrete About Recording Points Along a Route
        Traveled .......................................................................................................2

    B.    The '836 Patent Claims Fall Within *Digitech* and Many Other Cases
        Invalidating Data Collection Patents ......................................................4

III.  The '836 Patent Does Not Claim a Technological Solution to a Technological
    Problem .....................................................................................................................8

IV.   Adolph's Procedural Arguments Should Be Rejected ......................................10

V.    Conclusion .............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
134 S. Ct. 2347 (2014) ...................................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
56 F. Supp. 3d 813 (E.D. Va. 2014) ..............................................................7, 12

*California Institute of Technology v. Hughes Communications, Inc.*,
59 F. Supp. 3d 974 (C.D. Cal. 2014) ...............................................................6

*CLS Bank International v. Alice Corp. Pty*,
717 F.3d 1269 (Fed. Cir. 2013)........................................................................11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014)........................................................................9

*CyberFone Systems, LLC v. CNN Interactive Group, Inc.*,
558 F. App'x 988 (Fed. Cir. 2014) ..............................................................8, 9

*DietGoal Innovations LLC v. Bravo Media LLC*,
33 F. Supp. 3d 271 (S.D.N.Y. 2014).................................................................7

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)..............................................................1, 3, 5, 6

*Electric Power Group, LLC v. Alstom, S.A.*,
2015 U.S. Dist. LEXIS 67232 (C.D. Cal. May 21, 2015) ........................2, 3, 8, 10

*Enfish, LLC v. Microsoft Corp.*,
56 F. Supp. 3d 1167 (C.D. Cal. 2014) .............................................................6, 7

*Loyalty Conversion Systems Corp. v. Am. Airlines, Inc.*,
No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)............................7

*Market Track, LLC v. Efficient Collaborative Retail Marketing, LLC*,
No. 14 c 4957, 2015 WL 3637740 (N.D. Ill. June 12, 2015) ....................................7

*MicroStrategy Inc. v. Apttus Corp.*,
—— F. Supp. 3d ——, No. 3:15-cv-21-JAG, 2015 WL 4425828 (E.D. Va. July 17, 2015) ...............................................................................................7, 8, 11

*Netflix, Inc. v. Rovi Corp.*,
No. 11-cv-6591 PJH, 2015 WL 4345069 (N.D. Cal. July 15, 2015)...........................10, 12

*SiRF Tech., Inc. v. International Trade Commission,*
  601 F.3d 1319 (Fed. Cir. 2010) .................................................................................................10

*In re TLI Commcunications Patent Litigation*,
  MDL No. 1:14-md-2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) .............................1, 2, 11

*Ultramercial, Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014) ....................................................................................................2

*Versata Development Group, Inc. v. SAP America, Inc.*,
  —— F.3d ——, No. 2014-1194, 2015 WL 4113722 (Fed. Cir. July 9, 2015) .............................7

**FEDERAL STATUTES**

35 U.S.C. § 101 ..................................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(c) ...............................................................................................................11

## I.     INTRODUCTION

U.S. Patent No. 6,356,836 ("the '836 patent") should be invalidated because it claims nothing more than recording and organizing trip data.   Contrary to Dr. Adolph's arguments, it makes no difference that his patent "claims the generation and storage of specific travel data." Dkt #260 (Adolph Opp'n) at 3.   It also makes no difference that the claimed data are described as "nodes" or using notations such as "$P_jP_k$," or that the "geographical starting and end point are assigned" to the data.   *Id.* at 2 (quoting '836 Patent, Claim 1).   The patent still claims data.   As the Federal Circuit stated in *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."   758 F.3d 1344, 1351 (Fed. Cir. 2014).

Adolph's opposition brief does not even address *Digitech*, let alone the many district court decisions (discussed below and in TomTom's opening brief) invalidating patents similarly drawn to manipulating data.   Dr. Adolph instead makes arguments that have no bearing on patent eligibility—for example, pointing to purported value of the claimed data and arguing about the alleged novelty of his claimed invention (despite claim 1 having already been found invalid in Germany).   As this Court stated earlier this year when rejecting similar arguments, those arguments are "misplaced" in the patent eligibility context.   *In re TLI Commc'ns Patent Litig.*, MDL No. 1:14-md-2534, 2015 WL 627858, at *9 (E.D. Va. Feb. 6, 2015).

Dr. Adolph argues that his "patent is a technological invention."   Opp'n at 3.   But that is not what the patent claims.   The patent claims a "method for generating and updating data." '836 Patent, Claim 1 (Col. 17:36).   The '836 patent uses technology in the same way the "inertial sensors" of the F-35 fighter jet were used in *Thales Visionix, Inc. v. United States*—merely to "fill the role of gathering data to feed into the navigation equation."   No. 14-513C, 2015 WL

4396610, at *9 (Fed. Cl. July 20, 2015).  Such use of technology does not change the otherwise abstract nature of the claimed invention.

Dr. Adolph also argues that the claimed data are "for use in a destination-tracking system consisting of at least one mobile unit," ('836 Patent, Claim 1), or that the data may later be "used to make digital maps and predict traffic congestion." Opp'n at 3.  However, those arguments relate to field of use limitations, which narrow the patent claims but do not impact patent eligibility under 35 U.S.C. § 101.  *See, e.g., Elec. Power Grp., LLC v. Alstom, S.A.*, 2015 U.S. Dist. LEXIS 67232, at *15 (C.D. Cal. May 21, 2015) ("The most significant additional limitations in the asserted claim are those that limit the claim to monitoring and analyzing data in the context of electric power grids. But the fact that the claim is limited to power grid management does not change the nature of the claims from abstract to concrete.").  Dr. Adolph's opposition brief fails to demonstrate that the '836 patent should not be held invalid under § 101.

## II.     THE '836 PATENT CLAIMS AN ABSTRACT IDEA

Dr. Adolph's opposition brief highlights the wordiness of the '836 patent claims to argue the claimed invention is not abstract.  However, in the first step of the *Alice* analysis, the court must distill the patent claims down to the "concept embodied by the majority of the limitations." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  Dr. Adolph's "re-written" claim 1 actually depicts the abstractness of the '836 patent when the claims are distilled to their core concepts, (Opp'n at 1), and illustrates that the "real claim 1," (*id*. at 2), is little more an abstract idea "dressed up in the 'patent-ese' type convoluted language." *TLI*, 2015 WL 627858, at *13.

### A.      There Is Nothing Concrete About Recording Points Along a Route Traveled

Dr. Adolph argues that "the claim language recites the concrete details . . . and the specific characteristics reflected in that data as it is stored in a mobile unit of the destination

2

tracking system," (Opp'n at 9), but even with such details, the patent still claims data and is therefore patent ineligible. The concept embodied by claim 1 is "generating and updating data" comprised of "traveled distance data," "section data," and "a section data file." '836 Patent, Claim 1 (17:36-55). There is nothing concrete or tangible about traveled distance data, section data, or a section data file. "Data in its ethereal, non-physical form is simply information that does not fall under any of the categories of eligible subject matter under section 101." *Digitech*, 758 F.3d at 1350.

Dr. Adolph makes much ado about the patent using technical terms such as "nodes" and mathematical notations such as $P_i$, $P_j$, $P_k$, $x_i$, and $y_i$. *See* Opp'n at 10-15. However, even if those elements "add a degree of particularity [to the claims], the concept embodied by the majority of the limitations describes only the abstract idea of [recording points traveled and dropping the points along straight lines of travel]." *See Elec. Power*, 2015 U.S. Dist. LEXIS 67232, at *12 (finding patent abstract and invalid despite containing eight separate steps and specifically "enumerating the metrics to be collected and analyzed from the data sources").

Dr. Adolph's characterization of his patent claims highlights their abstractness. To generate "traveled distance data," points traveled are recorded in regular time intervals. *See* Opp'n at 10-13. To generate "section data," points along straight (or contiguous) lines of travel are dropped from the traveled distance data, so all that remains the first and last (or starting and ending) points of the lines of travel.[1] *Id*. at 13-15. Those remaining points are then stored in a

---

[1]     Dr. Adolph incorrectly describes "section data," stating that "if a GPS signal is lost . . . several 'bad' traveled distance data points could be generated that are not accurate and not contiguous with previously generated data." Opp'n at 13. But the patent does not claim section data as discarding bad data points that fall in between sections of traveled distance data.

The Court's claim construction confirms section data is generated by discarding good, but redundant, data points *within* each section of traveled distance data, not bad points falling *in between* two sections. *See* Dkt #199 at 2 ("selecting . . . the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one

"section data file." *Id*. at 15.  The '836 patent claims nothing more than recording a set of data points and dropping the intermediate points to create a smaller set of points.

A GPS device can be used to identify points traveled, but the GPS device exists only to generate data points and is otherwise incidental to the claimed method.  A compass, gyroscope, or sextant could also be used to generate the claimed "geographical coordinates $x_i$ and $y_i$."  '836 Patent, Claim 1 (17:43).  Those geographical coordinates could be plotted on graph paper or a topographic map to identify routes traveled.  Thus, far from providing "detail regarding how the various concepts are to be implemented," (Opp'n at 11), the patent recites a series of routine and conventional data processing steps, with the instruction to apply those steps in the context of "a destination tracking system of at least one mobile unit."  '836 Patent, Claim 1 (17:37).

Dr. Adolph also makes arguments about his claimed data being useful.  *E.g.,* Opp'n at 9.  But nothing in the patent claims refers to any specific use of the data.  As Dr. Adolph told the Federal Circuit, "Claim 1 does not describe a method for navigating, or a method for avoiding traffic, or even a method for making digital maps."  *See* Dkt #250-2 at 20.  And Dr. Adolph's opposition brief concedes any tangible use of the claimed data occurs at some point in "future," and not as part of performing the claimed method.  *See* Opp'n at 19 ("[Adolph's] approach to travel data collection *for future use* in map-making and traffic prediction provided at least two important benefits.") (emphasis added).

**B.      The '836 Patent Claims Fall Within *Digitech* and Many Other Cases Invalidating Data Collection Patents**

The '836 patent resembles other patents claiming manipulating data that have fallen since *Alice*. Dr. Adolph does not make any effort in his reply brief to distinguish these cases.

---

section is the start of the next section").  In any event, section data is generated by routine and conventional data processing steps (*i.e.,* collecting data points and dropping unneeded points).

In *Digitech*, the Federal Circuit invalidated the following patent claim, which used similar language as the '836 patent to describe manipulating data:

A method of generating a device profile that describes properties of a device in a digital image reproduction system for capturing, transforming or rendering an image, said method comprising:

generating first data for describing a device dependent transformation of color information content of the image to a device independent color space through use of measured chromatic stimuli and device response characteristic functions;

generating second data for describing a device dependent transformation of spatial information content of the image in said device independent color space through use of spatial stimuli and device response characteristic functions; and

combining said first and second data into the device profile.

*See* 758 F.3d at 1351 (citing U.S. Patent No. 6,128,415, claim 10). Despite defining the data using terms such as "measured chromatic stimuli, spatial stimuli, and device response characteristic functions," and even though the claimed data "describe[d] properties of a device in a digital image reproduction system," the Federal Circuit still found that the patent "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine." *Id.* at 1350.

Where the *Digitech* patent claims "generating first data" and "generating second data for describing a device dependent transformation of," respectively, "color information content of an image" and "spatial information content," (*id.*), the '836 patent claims "generating and storing traveled distance data" and "generating and storing section data." '836 Patent, Claim 1. And where the *Digitech* patent claims "combining said first and second data into the device profile," (758 F.3d at 1351), the '836 patent claims "a section data file . . . continuously supplemented and/or updated" with the data generated by the claimed method. '836 Patent, Claim 1. Thus, the '836 patent, like the patent in *Digitech*, claims "a process that employs mathematical algorithms

5

to manipulate existing information to generate additional information" and is therefore "not patent eligible." 758 F.3d at 1351.

Dr. Adolph does not attempt to distinguish *Digitech*, nor could he do so. As Judge Pfaelzer explained when analyzing *Digitech* but upholding the validity of patent claims related to error corrections in encoding and decoding processes, those asserted claims "contain[ed] meaningful limitations that represent[ed] sufficiently inventive concepts, such as the irregular repetition of bits and the use of linear transform operations" that were "narrowly defined . . . [and] tied to a specific error correction process." *Cal. Inst. of Tech. v. Hughes Communs., Inc.*, 59 F. Supp. 3d 974, 994 (C.D. Cal. 2014).

Dr. Adolph's claims contain no such meaningful limitations and instead recite recording points traveled and dropping the intermediate points when traveling on a straight line. The '836 patent confirms these are simple, routine, and conventional steps. '836 Patent, Col. 10:8-14 ("section data are generated from the traveled distance or route data . . . by dropping individual points . . . and choosing those points . . . which are most characteristic in defining a section of the route," *i.e.*, if points A-B-C-D form a straight line, points B and C would be dropped and points A-D would be chosen as characteristic of the straight line).

In that regard, Dr. Adolph's patent more closely resembles the patent claims Judge Pfaelzer invalidated in another decision issued that same day, *Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167 (C.D. Cal. 2014). In *Enfish*, "the claims capture[d] the concept of organizing information using tabular formats. As such, the claims preempt[ed] a basic way of organizing information, without regard to the physical data structure." *Id*. at 1176. Even though the claims necessarily used a computer to create data tables, and certain claims described a detailed "four step algorithm" for creating the data table, "[t]his algorithm [did] not constitute an

6

inventive concept" because "[a]ll four steps of the algorithm [were] conventional, and as an ordered combination, they remain[ed] conventional." *Id*. at 1178-79.

There are many other examples of patents drawn to processing data that have been held invalid post-*Alice*. *See, e.g., Versata Dev. Grp., Inc. v. SAP Am., Inc.*, ⸺ F.3d ⸺, No. 2014-1194, 2015 WL 4113722, at *22 (Fed. Cir. July 9, 2015) ("[T]he additionally claimed steps of storing, retrieving, sorting, eliminating and receiving were well-known, routine, and conventional steps."); *MicroStrategy Inc. v. Apttus Corp.*, ⸺ F. Supp. 3d ⸺ , No. 3:15-cv-21-JAG, 2015 WL 4425828, at *3 (E.D. Va. July 17, 2015) ("Identifying, organizing, and presenting stored information is an abstract idea that is devoid of a concrete or tangible application."); *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 c 4957, 2015 WL 3637740, at *6 (N.D. Ill. June 12, 2015) ("The basic concept of selecting a useful subset of data from a larger stored pool of data, organizing it for review, and disseminating the collected and organized results to others is the fundamental process by which information is used and shared in the modern economy."); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 823 (E.D. Va. 2014) ("Collecting, filtering, aggregating, and completing network information amounts to electronic recordkeeping . . . one of the most basic functions of a computer."); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at *10 (E.D. Tex. Sept. 3, 2014) ("[A]ll of [the claimed] functions consist of simple forms of data recording, storage, and calculation, all of which are conventional functions that can be performed by a generic computer without any novel programming or improvement in the operation of the computer itself."); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 287 (S.D.N.Y. 2014) (holding that "manipulating data based on inputs from the user, making computations from stored data, and displaying the results on a visual display" were "far

7

more 'routine' and 'conventional' than the computerized applications of the economic concepts invalidated in *Bilski* and *Alice*"); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, —— F. Supp. 3d ——, No. 14-7004; 14-7006 (JLL), 2015 WL 1810378, at *9 (D.N.J. Apr. 20, 2015) (invalidating claims directed to "the process of monitoring, recording, sorting, communicating, and generating information").  Dr. Adolph does not and cannot distinguish his patent claims from any of these cases invalidating similar data processing patents.

## III.   THE '836 PATENT DOES NOT CLAIM A TECHNOLOGICAL SOLUTION TO A TECHNOLOGICAL PROBLEM

Dr. Adolph argues that his patent claims "describe a particular computing solution that overcomes a problem specifically arising in the realm of digital map construction."  Opp'n at 3.  However, Dr. Adolph never describes how the claimed method itself solves a specific problem.  Dr. Adolph instead asserts that the data generated by the claimed method are useful "for future use in map-making and traffic prediction."  Opp'n at 19.  But the claimed invention does not describe map-making or traffic prediction.

The '836 patent claims collecting points traveled and then dropping intermediate points.  Dr. Adolph argues that his claims describe specific data points, but "[t]he enumerated metrics are simply routine, conventional metrics [e.g., points corresponding to locations traveled], so limiting the claims to monitoring and analyzing those metrics does not supply any sort of inventive concept."  *Elec. Power*, 2015 U.S. Dist. LEXIS 67232, at *16.  *See also CyberFone Sys., LLC v. CNN Interactive Grp., Inc.,* 558 F. App'x 988, 993 (Fed. Cir. 2014) ("the exploding step effects no meaningful transformation because it merely makes the originally—gathered information accessible to different destinations without changing the content or its classification.  Nor does the particular configuration of steps—obtaining, separating, and then sending information-confer patentability.")

8

Dr. Adolph also argues that "the claim can optionally require a GPS receiver to perform the necessary (and difficult) geolocation calculations." Opp'n at 21. Notwithstanding the apparent contradiction between an option and a requirement, whether a method is difficult to perform without the aid of modern technology is irrelevant in the patent eligibility analysis. If technology adds efficiency or speed to calculations, or only supplies data to be processed, the patent still claims an abstract idea. *Cyberfone*, 558 F. App'x at 992 ("Although methods that can be performed in the human mind alone are not eligible for patent protection, the category of patent-ineligible abstract ideas is not limited to methods that can be performed in the human mind.").

Lastly, Dr. Adolph points to the dependent claims as adding details that provide inventive concepts, but nothing in those claims adds to the claimed abstract idea. Claim 11 describes "transmitting the section data files of more than one mobile unit to at least one central computer" and "having said central computer merge said section data files at least at predetermined time intervals into one overall route file." Transmitting data to a central server to merge files is a generic computing function that is not even remotely inventive. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, and conventional activities.").

Claim 22 describes "determining absolute coordinates . . . using the Global Positioning System." But identifying coordinates is the routine, conventional function of a GPS device. *See* '836 Patent, Col. 8:26-29 ("A navigational GPS (global positioning system) receiver produces data which give the geographical position" of the device, "for instance, geographical latitude and

9

longitude."). Claim 22 and the other asserted '836 patent claims "do not seek to improve upon [GPS] technology and do not modify [GPS] capabilities." *Thales*, 2015 WL 4396610, at \*9. Rather, any use of GPS is to "fill the role of gathering data to feed into the [claimed method]" and does not provide an inventive concept. *Id.*

Because the '836 patent only uses GPS to provide underlying data, Dr. Adolph's citation to the Federal Circuit's pre-*Alice* (and pre-*Mayo* and pre-*Bilski*) decision in *SiRF Techchnology, Inc. v. International Trade Commission,* 601 F.3d 1319 (Fed. Cir. 2010), is misguided. *See* Opp'n at 24 (arguing that "the mobile unit using the GPS system . . . renders [claim 22] patent-eligibile"). Even if "*SiRF* may remain good law . . . in light of *Alice* . . . a machine must do more than simply play a significant part in permitting the claimed method to be performed in order to supply the required inventive concept." *Netflix, Inc. v. Rovi Corp.*, No. 11-cv-6591 PJH, 2015 WL 4345069, at \*19 (N.D. Cal. July 15, 2015). The '836 patent is therefore not analogous to the patent-at-issue in *SiRF*, which was "directed to improving the GPS device itself, and modifying the way GPS signal receivers could calculate location in poor signal reception conditions." *Thales*, 2015 WL 4396610, at \*9.

Similarly, Claims 23 and 24 add recording "a time $T_i$ of arrival" and "an absolute time of motion $T_{jk}$" to the claimed data. Time of travel can be recording using a clock. '836 patent, 8:43-44 ("a clock . . . generates a signal corresponding to the absolute time"). Thus, both parameters "are simply routine, conventional metrics" that do not add inventive concepts to the claims. *Elec. Power*, 2015 U.S. Dist. LEXIS 67232, at \*16.

## IV.   ADOLPH'S PROCEDURAL ARGUMENTS SHOULD BE REJECTED

Dr. Adolph raises three procedural challenges to TomTom's motion. None of those arguments has merit. In fact, TomTom already addressed the second and third arguments in its opposition (dkt #259) to Adolph's motion to strike (dkt #255).

10

First, Dr. Adolph argues that "TomTom cannot prevail on the merits of its . . . Section 101 challenge unless it shows by clear and convincing evidence that all of the asserted claims of the '836 patent are directed to patent-ineligible subject matter." Opp'n at 5. The '836 patent is invalid under any evidentiary standard, because "regardless of the standard applied, the claims here are ineligible based on a reading of the claims themselves." *MicroStrategy*, 2015 WL 4425828, at *1 n.5; *see also TLI*, 2015 WL 627858, at *19 ("[W]hether or not the clear and convincing evidence standard applies, the only plausible reading of the [patent-at-issue] is that it is directed to patent-ineligible subject matter and is therefore invalid under § 101.").

Second, Dr. Adolph argues TomTom's motion is "tardy" and out of order. Opp'n at 6. TomTom promptly moved for judgment on the pleadings after remand, thus ensuring no delay in the case. The motion will be heard on September 18, 2015 at the parties' first appearance since remand. TomTom's motion was filed "early enough not to delay trial," (Fed. R. Civ. P. 12(c)), and is thus procedurally proper. Dr. Adolph also notes that TomTom previously moved for summary judgment of non-infringement, but TomTom did so with leave of court. *See* Dkt #104 at 1 ("It is hereby ORDERED that the parties are no longer restricted to one Rule 12 or Rule 56 motion and may file partial summary judgment motions if they so desire."). And although TomTom moved for summary judgment of non-infringement, (dkt #200), after claim construction, Dr. Adolph stipulated to non-infringement before the Court could consider that motion (and indeed, parts of that motion still remain ripe for consideration).

Third, Dr. Adolph argues that there is no "good cause" for this motion because "*Alice* did not change the Section 101 patent eligibility analysis." Opp'n at 7-8. However, the issues the Supreme Court settled in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), had previously left an *en banc* Federal Circuit deeply fractured across multiple

11

concurring and dissenting opinions. *See CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269 (Fed. Cir. 2013).  Contrary to Dr. Adolph's assertion, this Court has stated "*Alice* represents a change, or a significant clarification, of the law." *Amdocs*, 56 F. Supp. 3d at 819.  *See also Netflix*, 2015 WL 4345069, at *4, 5  (*Alice* "made clear that the two-step approach set forth in *Mayo* applied not only to patents relating to natural laws, but also to patents relating to abstract ideas" and "clarif[ied] that the addition of a generic computer was not enough for § 101 patentability"). For these reasons, good cause exists for TomTom's motion.

## V.      CONCLUSION

For the reasons set forth above and in TomTom's opening brief, TomTom respectfully requests that the Court hold the Adolph patent invalid under Section 101.

Dated: August 20, 2015

 */s/ Brian H. Pandya*
James H. Wallace, Jr. (admitted *pro hac vice*)
Brian H. Pandya (VSB No. 72233)
Karin A. Hessler (VSB No. 76834)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
jwallace@wileyrein.com
bpandya@wileyrein.com
khessler@wileyrein.com

COUNSEL FOR DECLARATORY JUDGMENT
PLAINTIFF TOMTOM, INC. AND
COUNTERCLAIM DEFENDANTS TOMTOM
INTERNATIONAL B.V. AND TOMTOM
NORTH AMERICA, INC.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing document was electronically filed and served on counsel of record via the Court's CM/ECF system on August 20, 2015.


/s/Brian H. Pandya
Brian H. Pandya

13